Paul J. Kelly, J.
This is an appeal from a judgment of conviction rendered by the Police Justice Court of the Incorporated Village of Rockville Centre for violation of Village Ordinance 1.3(b). Upon conviction, each defendant was fined the sum of $50. Execution of the sentence was suspended.
Village Ordinance 1.3(b) provides: “ Ordinance 1.3 — Disturbing the peace. No person shall indulge in disorderly, or *558 noisy or disturbing conduct within the Village. Any person who commits any of the following acts will be considered in violation of this provision: * * * (b) Acts in such manner as to annoy, disturb, interfere with, obstruct or be offensive to others.”
At approximately 4:20 p.m. on Friday, September 24, 1965, the defendants and about 15 adults and children entered and congregated in and in front of the office of the Rockville Centre Urban Renewal Agency. The office, at that time was occupied by two secretaries. A few minutes later a maintenance man arrived.
The spokesman, who represented the adults and children, asked to see the Director of the Urban Renewal Agency. The secretary said that he was not in. At about 4:30 p.m., the Director of the Rockville Centre Urban Renewal Agency returned to his office.
The spokesman for the complaining group presented numerous alleged grievances in writing to the Director. The Director stated that the list of grievances were too involved and numerous and that he would read them over the week end. The group insisted on an immediate answer. The Director then informed the complaining group that the office hours were from 8 a.m. to 4:30 p.m., and since it was then after 4:30 p.m. that the office was closed. He requested the complaining group to leave and if they wished to return on Monday. The spokesman remained adamant and continued to insist on immediate answers to the grievances.
Meanwhile, one of the two secretaries had called the police, and Patrolman Kenneth V. Hock of the Rockville Centre Police arrived. The Director told the police officer the situation and informed him that the office was officially closed. The officer requested the group to leave. At this time, all but three people left.
Sergeant Healy of the Rockville Centre Police Department arrived at the scene at approximately 4:45 p.m. The Director advised him of the situation. Sergeant Healy then asked the spokesman and the two others to leave and come back on the following Monday. The spokesman said they would not leave until her grievances were satisfied. The Director then told the spokesman that he would review the complaints over the week end and discuss them on the following Monday.
The Director requested Sergeant Healy to inform the three people that if they did not leave by 5:00 p.m. he would sign a complaint and have them arrested. At 4:53 p.m., Sergeant Healy so informed the three people.
*559 At 5:00 p.m., Sergeant Healy again asked the three people what their decision was. One person decided to leave. The two remaining individuals were arrested and physically carried from the premises.
The defendants claim that their actions were protected by the First and Fourteenth Amendments to the United States Constitution. Among the many decisions rendered by the Supreme Court of the United States in recent years and cited by the defendants, Brown v. Louisiana (383 U. S. 131) contains an excellent discussion of the applicable law.
In the Brown case, five Negroes entered the Audoban Regional Library in the Parish of East Feliciana, Town of Clinton, Louisiana. The library had three branches and two bookmobiles. One of the bookmobiles was red; one was blue. Negroes did not use the branch libraries. The red bookmobile served only white people. The blue bookmobile served only Negroes. The five Negroes were met in the service room of the branch library. They asked for a particular book. The librarian stated that the library did not have the particular book but that she would order it from the State library. She further stated that she would notify the men when the book was received and that ‘ ‘ his point of service was a bookmobile or it could be mailed to him ’ ’.
The five men did not leave. They remained seated in the room, quietly. They were arrested and convicted of a breach of the peace.
The Supreme Court held that the defendants’ actions were protected by the First and Fourteenth Amendments to the Federal Constitution.
However, this court finds that the Brown case is readily distinguishable from the case at bar. In Brown, there was no claim that other patrons of the library were disturbed or interfered with. Moreover, the defendants did not enter the library and overstay the closing hour. In fact, the prevailing majority opinion stated (p. 142): ‘ ‘ Perhaps the time and method were carefully chosen with this in mind. Were it otherwise, a factor not present in this case would have to be considered.” In addition the Brown case is distinguishable on yet another ground. The Supreme Court’s prevailing opinion stated (p. 143): “ A State or its instrumentality may, of course, regulate the use of its libraries or other public facilities. But it must do so in a reasonable and nondiscriminatory manner, equally applicable to all and administered with equality to all. It may not do so to some and not as to all. It may not provide certain facilities for whites and others for Negroes. And it may not invoke regulations as to use — whether they are ad hoc or general — *560 as a pretext for pursuing those engaged in lawful, constitutionally protected exercise of their fundamental rights. Cf. Wright v. Georgia [373 TJ. S. 284, 293].” The above-quoted language clearly indicates that the Supreme Court reversed the judgments of conviction on the ground that the statute was used as a pretext for the unconstitutional insidious discrimination against Negroes. In the case at bar, the defendants neither claim discrimination nor does this court find any indication in the record of discriminatory or unequal application of the ordinance. Cox v. Louisiana (379 U. S. 536); Henry v. City of Rock Hill (376 U. S. 776); Edwards v. South Carolina (372 U. S. 229) and Garner v. Louisiana (368 U. S. 157) are distinguishable on the same constitutional ground, i.e., violation of the First and Fourteenth Amendments.
The People rely on People v. Martin (43 Mise 2d 355, affd. 15 N Y 2d 933). There, the defendants attended a meeting of the Board of Education of the Málveme School District. The purpose of their attendance was to protest the alleged failure of the board to correct the racial imbalance in the schools. The Appellate Term, Second Department, stated that the defendants’ attendance at the meeting was proper, but their subsequent conduct in refusing to leave within a reasonable time after the conclusion of the meeting, upon request of the authorities, and their interfering with the efforts of the school officials to close the school was unlawful.
It must be noted that the prosecution of the defendants in the Martin case was conducted pursuant to subdivision 2 of section 722 of the Penal Law, a statute which is similar to the ordinance used in the instant case.
This court concludes that the defendants’ attendance at the office of the Rockville Centre Urban Renewal office was proper but that their subsequent conduct in refusing to leave within a reasonable time at the conclusion of the work day, upon request of the Director and in interfering with the efforts of thé Urban Renewal officials to close the office was unlawful and,á violation of subdivision (b) of section 1.3 of the Village' Ordinance. (People v. Martin, supra.) Thus, this court finds that the People have proven the defendants’ guilt beyond a reasonable doubt and that the verdict was in accord with the credible evidence.
The court has carefully examined the other' arguments raised by the defendants and finds them to be without merit.
Accordingly, it is ordered that the judgments of conviction are hereby affirmed. J