Arnold P. Etelson, J.
Defendants are charged with violating section 195.05 of the Penal Law of the State of New York— obstructing governmental administration. The 15 informations separately state that the defendant “did forcefully enter the waiting area of Selective Service Board Local #13, interfering with and disrupting the orderly course of business necessary for the induction process and did refuse to leave when requested to do so ”, these acts allegedly occurring at the Selective Service Board Number 13 in Spring Valley, New York, on February 17, 1971. The defendants demanded a jury trial and requested that they be tried jointly. At the end of the People’s case, defendants moved to dismiss the informations on three grounds:
1. That the conduct was legal as affording to the defendants the right to peaceably assemble and to petition the Government for a redress of grievances, pursuant to the First Amendment of the United States Constitution and section 9 of article I of the New York State Constitution.
*475 2. That the court lacked jurisdiction because the Selective Service Act of 1967 provided exclusive jurisdiction for hearing violations of the act in the Federal court and because the New York statute did not apply to public officials or employees other than those of the State or its political subdivisions, or instrumentalities thereof.
3. That the People failed to prove a prima facie case. The People’s evidence as adduced from four village police officers and the supervisor of the local selective service board substantially stated that the 15 defendants (among six others not tried herein) rushed into the Selective Service office, milled around the office, and swarmed over the desks in their quest of speaking to members of the local board then and there meeting in a separate room, and refused to leave when directed to do so by the supervisor, the chairman of the local board, and by two or more of the police officers who later arrived. The office consisted of a small reception area, a larger interior room where several clerks worked at their desks and in which file cabinets were situated, and a smaller room where the board members were meeting. The defendants are stated to have passed through a gate separating the reception area from the room where the clerks worked, the gate having a sign facing the reception area stating ‘ ‘ do not enter— authorized personnel only”. The supervisor testified that she and several other female clerks were frightened by the actions of the defendants which completely disrupted their work, and further, that confidential material was on the desk. The defendants were advised by one of the police officers that they would be arrested if they refused to leave. The defendants were in no manner violent and none of them is alleged to have shouted.
The first ground for dismissal, an alleged abridgement of the right to peaceably assemble for a redress of grievances, is untenable. Although this is one of our most important rights, indeed number one in our Bill of Rights, the place chosen to disseminate the views of a group of people must be public or a place to which the public customarily have access. It must also be a place that resembles a public thoroughfare in order to make it an appropriate place for the exercise of these rights. As further stated in Wolin v. Port of New York Auth. (392 F. 2d 83, cert. den. 393 U. S. 940) the court should consider whether the character of the place, the pattern of usual activity, the nature of its essential purpose and the population who take advantage of the general invitation extended make it an appropriate place for communication of views on issues of political and social significance.
*476 It is clear that the private sector of a Government office does not meet the above requirements or specifications. In a remarkably similar factual situation (People v. Kern, 56 Misc 2d 557) approximately 17 people congregated in and in front of the office of the Rockville Centre Urban Renewal Agency, late on a Friday afternoon, for the purpose of discussing certain grievances with its director. The director stated that the written list of grievences given to him was too voluminous to discuss at that time and he invited them to return the following Monday after he had an opportunity to consider them. Several of the group refused to leave after being directed to do so by the director and by a police officer, the office being closed for business at that hour. After several demands and refusal by the defendants, the latter were arrested and charged with the violation of a local ordinance. The court held against the defendants’ claim that the First and Fourteenth Amendments to the United States Constitution protected their actions and sustained a lower court conviction. The motion to dismiss the subject informations on this ground is therefore denied.
Defendants ’ second ground for dismissal concerns itself with the question of jurisdiction in this court because of the very complex issue of pre-emption found in clause 2 of article VI of the United States Constitution, the supremacy clause. There are countless State and Federal decisions on the subject of preemption by the Federal courts so as to divest jurisdiction in the State courts. Fitzgerald v. Catherwood (388 F. 2d 400) in discussing a prospective prosecution of an alleged violation of a New York State labor statute in a State court in New York, suggested that the history or general purpose of the particular Federal and State statutes might be the basis for determining whether the State court should be pre-empted. In Pennsylvania v. Nelson (350 U. S. 497) cited by defendants, the Supreme Court noted the fact that under the Federal Smith Act, persons receiving information about seditious activity should deliver it directly to the F.B.I. rather than to State investigative agencies. The Congressional intent appeared to be to assure that the proper channels receive this important information as soon as possible.
In the case at bar, we are concerned with a Federal statute, being the Military Selective Service Act of 1967 (U. S. Code, tit. 50, App., § 462, subd. [a]). That statute provides penalties for, among other things, knowingly hindering or interfering or attempting to do so in any way, by force or violence or otherwise, with the administration of that act or the rules and regulations made pursuant thereto. The last sentence of subdivision *477 (a) of that section reads: “Precedence shall be given by courts to the trial of cases arising under this title, and such cases shall be advanced on the docket for immediate hearing, and an appeal from the decision or decree of any United States district court or United States court of appeals shall take precedence over all other cases pending before the court to which the case has been referred.”
Subdivision (c) reads: “The Department of Justice shall proceed as expeditiously as possible with a prosecution under this section, or with an appeal, upon the request of the Director of Selective Service System or shall advise the House of Representatives and the Senate in writing the reasons for its failure to do so.”
The statute concerns itself with the strictly Federal function of providing manpower for the United States Armed Forces. This Federal function, it seems, should be distinguished from a statute such as the Federal Espionage Law which, in Gilbert v. Minnesota (254 U. S. 325) was held not to pre-empt a State statute dealing with unlawful activity similar to the Federal act. It is not so much that the Military Selective Service Act has ‘' occupied the field ’ ’ by legislating against a specific type of criminal behavior. Rather, it has established a mechanism for the composition of the Federal military forces and has provided for penalties for those interfering with the execution of this function. So urgent did Congress deem that this function be carried out that it specified that all cases concerning the violation of the statute be given precedence, both at the trial and appellate level, as set forth above. Further, that the Department of Justice be responsible to proceed expeditiously to prosecute violations of the act, upon request of the director, and to account to Congress, concerning its failure to do so. It is clear that Congress intended the Federal courts exclusively to take jurisdiction of violations of the act and on this ground the informations must be dismissed.
The third ground for dismissal, alleged failure to prove a prima facie case, is academic, but should be discussed because of a recent decision involving the statute under prosecution. The elements of the crime of interference with governmental administration are:
(1) intent
(2) obstruction, impairment or perversion of the administration of law or governmental function, or preventing or attempting to prevent the performance of that function, by
(3) intimidation, physical force or interference or by an independently unlawful act.
*478 One intends the natural consequences of his actions. Although it may be said that the defendants intended in good faith merely to speak with the board members in an attempt to convince them not to continue their process of drafting young men in the community, the natural consequence of their actions and conduct prima facie obstructed and prevented public servants from performing official functions. Although it is arguable whether the clerks were intimidated, and clear that there was no physical force or the type of physical or violent interference apparently required by the statute, there was an independently unlawful act in the form of a trespass. The facts proved prima facie a violation of section 140.10 of the Penal Law — criminal trespass in the second degree — -by the defendants’ entering and remaining unlawfully in the private sector of a public office building. (See Penal Law, § 140.00, subd. 5.) The question of “ Governmental ” administration and the jurisdiction of this court aside, the People have proven a prima facie case.
In People v. Garfield (63 Misc 2d 79) the court decided on May 7,1970, that a defendant who allegedly interfered with governmental administration on a selective service bus upon which inductees were in the process of boarding should not be prosecuted in a State court. While that case did not clearly state that the Selective Service Act of 1967 pre-empted the field so as to preclude a State from enforcing a violation of law concerning selective service procedures, it did decide that the New York statute did not specify that the crime charged herein be applied to the Federal Government and its agencies.
Subdivision 15 of section 10.00 of the Penal Law defines a public servant as “ (a) any public officer or employee of the state or of any political subdivision thereof or of any governmental instrumentality within the state, or (b) any person exercising the functions of any such public officer or employee. ’ ’ The term certainly includes a State, county, town or village officer or employee, and probably includes like personnel in public school districts and possibly fire districts.- It should also include personnel on planning boards and like advisory boards, whether salaried or not. These are in a sense arms of the government which aid in its proper functioning. An instrumentality is defined as ‘ ‘ the fact or function of serving some purpose, a means or agency, helpfulness, usefulness”. The term “governmental instrumentality ” would appear to round out all agencies organized or existing to assure the functioning of government. In its context, however, it cannot reasonably be said to constitute a catch-all to include Federal agencies that find themselves located *479 in the State. Had the intent of the Legislature been to include Federal Government and Federal agencies it would have stated any ‘ ‘ public officer or employee of the United States or of the state, ’ ’ etc.
For the reasons stated, the informations are dismissed and the defendants are discharged.