Theodore Dachehhauseh, Jr., J.
Initial motions to dismiss having been denied, defendants now bring this supplemental pretrial motion to dismiss Indictment No. 138-74 upon the ground that the acts alleged in said indictment do not constitute the crime of bribery. Said indictment alleges as follows:
*694 “ The Grand Jury of Orange County, by this Indictment, accuse Israel Zef Herskowitz and Julius Michael Jacobs of the crime of Bribery in the Second Degree, in violation of the provisions of Section 200.00 of the Penal Law of the State of New York, committed as follows:
“ The said defendants, on or about and between May 21, 1974 and June 27, 1974, in the Town of Wallkill and City of Middletown, Orange County, New York, conferred, offered and agreed to confer a benefit, to wit: Money, upon a public servant to wit: Louis Ingrassia, Assemblyman of the State of New York, upon his agreement and understanding that such public servant’s vote, opinion, judgment, action, decision or exercise of discretion as a public servant would thereby be. influenced so that property owned by defendants and known as the Comfort Farm, would be permitted to connect to and become a part of a water district and sewer district located in the Town of Wallkill, Orange County, New York.”
Section 200.00 of the Penal Law provides: “ § 200.00 Bribery in the second degree. A person is guilty of bribery in the second degree when he confers, or offers or agrees to confer, any benefit upon a public servant upon an agreement or understanding that such public servant’s vote, opinion, judgment, action, decision or exercise of discretion as a public servant will thereby be influenced.”
The defendants ’ position, in effect, is stated thusly: Conceding, for the purposes of this motion, that every fact recited in the indictment is true, said indictment does not allege facts which constitute a violation of section 200.00 of the Penal Law and, therefore, is fatally defective as a matter of law because the official alleged to have been bribed, within the conduct of his office as a public servant, had no power, authority or function to perform or refrain from performing the act in respect of which it was sought to influence him.
The touchstone of this motion, therefore, involves an interpretation of the phrase “as a public servant ” as contained in .section 200.00 and a determination of whether the conduct .sought to be performed in this case was within the ambits of such phrase as it applies to a member of the State Assembly.
From its earliest common-law beginnings the crime of bribery has been denoted as an offense involving an official who accepted, privately, an undue reward intended to influence conduct in office. Although originally directed against the corruption of Judges and other officials involved in administering justice, its scope has been enlarged over the years so that today it *695 encompasses all public servants. Even though the evolution of this penal statute has significantly expanded the category of public officers whose corruption is prohibited, it is significant that the conduct sought to be influenced still must relate to the powers, duties or functions of the public officer in Ms official or public servant capacity, as opposed to Ms individual capacity. (People v. Chapman, 13 N Y 2d 97.)
An examination of the various decisions .interpreting the provisions of section 200.00 and its progenitors reveals in each case that the individual found to have been bribed had either colorable authority to act in connection with the subject matter of the bribe (People v. Jackson, 191 N. Y. 293; People v. LaFaro, 250 N. Y. 336; People v. Chapman, supra), or some official relationship thereto by virtue of his employment. (People v. Clougher, 246 N. Y. 106.)
It is a cardinal rule of statutory interpretation that the intention to change a long-established rule or principle is not to be imputed to the Legislature in the absence of a clear manifestation thereof. (Matter of Delmar Box Co., 309 N. Y. 60.) The practice 'Commentary relating to article 200 of the Penal Law, which includes section 200.00, reaffirms this precept in the following language: ‘1 The definition of the offenses in Article 200 makes no major substantive change in the former law, but attempts, by a largely formal restatement, to simplify and clarify.” (Denzer and McQuillan, Practice Commentaries, McKinney’s Cons. Laws of N. Y., Book 39, Penal Law, p. 648.)
It is not to be supposed that the Legislature will deliberately place words in a statute which are intended to serve no purpose (People v. Dethloff, 283 N. Y. 309), and by the specific inclusion therein of the words “asa public servant ” the legislative intent is clearly framed in language which is plain and concise. Courts are not at liberty to hold that the Legislature had an intention other than that which the language imports. (Ocean Hill-Brownsville Governing Bd. v. Board of Educ., 30 A D 2d 447.) Although the court is mindful that the rule of strict construction applicable to penal statutes has been modified somewhat by the legislative declaration that the Penal Law provisions shall be “ construed according to the fair import of their terms to promote justice and effect the objects of the law” (Penal Law, § 5.00), it does not permit an essential part of a statute to be ignored in a particular case. (People v. Teal, 196 N. Y. 372.)
The fair import of the inclusion of the qualifying words “ as a public servant” in section 200.00 of the Penal Law is that the Legislature intended to shield from corruption only those *696 actions of a public servant which are related to or within the scope of his functions as a public servant. Otherwise, there would be no necessity or need for the words employed. While on the one hand, the court must not be overly technical in interpreting penal provisions, on the other hand, penal responsibility cannot be extended beyond the fair scope of the statutory mandate. (People v. Sansanese, 17 N Y 2d 302; People v. Wood, 8 N Y 2d 48.)
Passing now to the question of whether the conduct sought to be performed was within the “public servant” role of Louis Ingrassia, it is noted that sections 75, 76 and 77 of the Public Officers Law reveal a number of functions a State legislator performs within his “ official ” capacity, but none of these appear to apply to the area wherein action was sought in the instant case, namely, the extension of water and sewer districts within a town. Extending the water district and sewer district so as to include defendants’ property, or authorizing the connection of defendants’ property to either or both of such districts, is a matter solely within the authority, discretion and functions of the Wallkill Town Board, pursuant to the provisions of the Town Law, and especially sections 209-d and 209-f thereof. As to the power of the town board in this general area, see also Wright v. Town Bd. of Town of Carlton (41 A D 2d 290). Although Assemblyman Ingrassia, during some period in the past, had been a member of the Wallkill Town Board, he neither held such office nor had any official relationship with said town board at the time of the alleged offense. Furthermore, it has not been seriously urged, let alone demonstrated in the papers submitted by the People on this motion, that any official power, authority or public servant functions of Louis Ingrassia, as Assemblyman, were in any way related to the matter here under consideration. Therefore, it must necessarily follow, and the court accordingly determines that the conduct of Assemblyman Ingrassia, which, allegedly, was sought to be influenced herein, was not within the scope of the power, duties, authority or other functions of a member of the Assembly, acting in his official or “ public servant ” capacity.
In so holding, this court in no way condones or approves the alleged actions attributed to defendants. On the contrary, it applauds Mr. Ingrassia for his alertness in perceiving an approach for apparently improper purposes. However, the court’s distaste for the conduct attributed to defendants is altogether beside the point. This is not a contest between the court and defendants, but rather a prosecution by the Pepple of *697 the State of New York under a specific penal statute. Our system of jurisprudence forbids the stretching of a statute to fit the facts, and no prosecution, let alone conviction, can be justified unless the facts fit clearly within the ambit of the statute. We may not predicate guilt upon the basis of personal aversion, revulsion or distaste. Justice under the law must be objective and impersonal. (People v. Feliciano, 10 Misc 2d 836.) Even the most corrupt and reprehensible individual may not be deprived of liberty unless his guilt is established within the confines of an applicable penal statute. (People v. Dioguardi, 8 A D 2d 426, revd. on other grounds 8 N Y 2d 260.)
The court is constrained at this point to observe that it may be desirable to prohibit the conduct allegedly involved herein as it relates to a public officer acting outside his public servant capacity. If such be its aim, the Legislature may accomplish it by a .statute clearly and specifically drawn for that purpose. A court cannot, however, read that design into the statute here involved. Having concluded that the acts sought to be performed by Assemblyman Ingrassia were not within his public servant capacity, an essential element of the crime is found to be lacking. Accordingly, defendants’ motion to dismiss Indictment No. 138-74 is hereby granted and said indictment is hereby dismissed.
We turn now to the separate motion in which defendant Herskowitz seeks dismissal of Indictment No. 138-A-74, as based upon legally insufficient evidence obtained as the fruits of an alleged illegal arrest. It is axiomatic that the dismissal of an indictment is not determinative of the legality of the initial arrest. As a general rule the legality of an arrest is determined by the presence or not of probable cause. It may very well be that there was sufficient evidence to establish probable cause for the arrest of the defendants, but this issue can be determined only upon a proper motion directed to that issue. A motion to dismiss the indictment is not the proper vehicle to test the constitutionality of the manner in which evidence was obtained. (People v. Gentile, 20 A D 2d 412.) Defendant’s moving papers fail to set forth sufficient allegations of fact required to overcome the presumption that an indictment is based upon legal and sufficient evidence. (People v. Howell, 3 A D 2d 153, 155.) Defense counsel’s affirmation containing matters of opinion and surmise is not sufficient to warrant even an in camera inspection of the Grand Jury minutes by the court. (People v. Howell, supra; People v. Ricci, 59 Misc 2d 259.)
*698 Accordingly, the motion to dismiss Indictment No. 138-A-74 is denied.
resubmission to grand jury
Pursuant to CPL 210.20 (subd. 4), the People have requested authorization to resubmit this matter to another grand jury in the event Indictment No. 138-74 was dismissed.
Although it has dismissed the indictment for the reasons hereinabove set forth, the court has not ruled that the impediment cannot be overcome by a properly framed indictment. The People should not be foreclosed from a resubmission. Accordingly, the application is granted.