OPINION OF THE COURT
Steven Lloyd Barrett, J.
Defendant Smith was charged in a misdemeanor complaint, drawn October 11, 1984, then amended October 22, 1984, and subsequently deemed an information, with the crime of obstructing governmental administration (Penal Law § 195.05). The factual allegations absent from the October 11 complaint but contained in the October 22 complaint assert that, while United States Marshall Richard Hollander was arresting another, defendant used physical force or interference to attempt to prevent the arrest. The portion of Penal Law § 195.05 *734 upon which the People have proceeded requires that a “public servant” be prevented from performing an official function.
The defense contends that the amendment of the October 11 instrument was barred under CPL 200.70 (2) (b), which proscribes the amendment of an instrument for the purpose of curing the “[l]egal insufficiency of the factual allegations”. The defense thereupon contends that the charges must be dismissed pursuant to CPL 100.40 (1) (a) due to the facial insufficiency of the October 11 instrument. Alternatively, the defense contends that the charges must be dismissed on the ground that no crime is charged upon the facts asserted. Counsel argues that the “public servant” requirement of Penal Law § 195.05 is not applicable to Federal officers such as the United States Marshall involved here.
For the reasons that are set forth below, both claims of the defense are rejected and the motion to dismiss is denied.
On October 11, 1984, the original accusatory instrument in this matter was filed in Part AR-3. The misdemeanor complaint set out factual information only as to the place and officer involved, along with the allegation “defendant did interfere with the arrest of another”. On October 22, 1984, the People offered an amended affidavit setting forth additional facts to correct deficiencies in the original accusatory instrument. At the time, defendant objected to the filing of the superseding affidavit. However, Judge Stanley Katz permitted the amendment and converted the instrument to an information, inviting appropriate contrary authority for further consideration. This court deems defendant’s motion herein to be the further argument on point contemplated by Judge Katz.
The court finds that it was legally permissible for the People to amend the original complaint, and therefore denies this branch of defendant’s motion. The purpose behind the filing of the amended affidavit by the People was to cure the defective complaint. A complaint as defined by the CPL 100.10 serves as a basis for the commencement of a criminal action. As noted by the Practice Commentary, the misdemeanor complaint was designed as a procedural mechanism for “arraigning and holding a defendant upon a misdemeanor when reasonable cause is present but facts constituting a prima facie case are lacking * * * This instrument may be used to commence an action but a defendant has a right to its replacement by information for trial purposes” (Bellacosa, Practice Commentary, McKinney’s Cons Laws of NY, Book 11 A, CPL 100.10, p 19).
*735 Consequently, the misdemeanor complaint falls within the category of a provisional pleading serving the exclusive purpose of providing a court with temporary jurisdiction over the defendant (see, People v Arturo, 122 Misc 2d 1058,1061 [Crim Ct, NY County 1984]). Here, the People moved to amend the defective instrument on a timely basis, 10 days subsequent to the original filing of the complaint. The amendment was filed for the purpose of curing a defectively drafted complaint; it supplied factual allegations necessary for prosecution under Penal Law § 195.05, and did not alter the theory of prosecution. (See, People v Pacifico, 105 Misc 2d 396, 398 [Crim Ct, Queens County 1980].)
We now turn to the second branch of defendant’s motion concerning the definition of “public servant” under Penal Law § 195.05 and its application to Federal officers.[1]
The defendant has appropriately cited authority holding that Penal Law § 195.05 does not encompass Federal employees acting as “public servants” within the State (see, People v Garfield, 63 Misc 2d 79 [City Ct, Utica 1970]; People v Arvio, 66 Misc 2d 474 [Justice Ct, Spring Valley 1971]). Although the authorities relied upon by the defendant are instructive, I find that the rationale of other cases extending the scope of public servants beyond official New York State employees is more persuasive. I find further support by analogy for this conclusion from legislative extension of peace officer status to Federal law enforcement officials.[2]
Penal Law § 10.00 (15) defines “Public servant” as “(a) any public officer or employee of the state or of any political subdivision thereof or of any governmental instrumentality within the state, or (b) any person exercising the functions of any such public officer or employee. The term public servant includes a person who has been elected or designated to become a public servant.” The Practice Commentaries to Penal Law § 10.00 inform us that subdivision (15) was enacted to provide a comprehensive definition of the various categories established under the former Penal Law for “Public servants”, e.g., public officers, *736 executive officers, and a number of other titles. As indicated by Commentator Arnold Hechtman, the revised Penal Law broadly defined “public servant” as “not only every category of government or public ‘officer,’ but every ‘employee’ of every such officer or agency, every person specially retained to perform some government service”. (Hechtman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law § 10.00, pp 22-23.)
Unfortunately, the Practice Commentaries fail to set forth whether the comprehensive scope of Penal Law § 10.00 was intended to embrace Federal officers under the clause “any governmental instrumentality within the state” or to restrict the statute’s reach to State instrumentalities.
. This question was addressed in People v Ebuzome (107 Misc 2d 464 [Sup Ct, Queens County 1981]), where the defendant sought to dismiss a count of bribery under Penal Law § 200.00, on the grounds that a Federal customs inspector was not a “public servant” within the definition of Penal Law § 10.00 (15). The court focused on the question of whether the United States customs inspector involved in the case fell within the ambit of the statute as an “individual specially retained to perform some government service,” or whether subdivision (15) required a specific relation to the sovereign powers of the State of New York, such as employer/employee. Judge Hentel noted that NY Constitution article XIII implies that the term “public officers”, includes District Attorneys, elected officials, county clerks, and the panoply of executive and judicial employees holding office under the State. However, he found that the scope of the crime of bribery had been enlarged to encompass all persons retained to perform government service. (People v Ebuzome, supra, at p 466, citing People v Herskowitz, 80 Misc 2d 693, 694-695 [County Ct, Orange County 1975].) Noting that statutes must be construed according to their “fair import” and to “promote justice and effect the objects of the law” (Penal Law § 5.00), he concluded that the term “public servant” encompassed a United States customs employee as a “governmental instrumentality within the state.” (People v Ebuzome, supra, at p 466.) Significantly, this ruling emanated from the court’s view that the intended impact of the bribery statute enacted by New York was that any person performing a governmental service, whether or not in New York’s employ.
The Fourth Department of the Appellate Division was similarly guided by Penal Law § 5.00, in Matter of Onondaga County Dist. Attorney’s Off. (92 AD2d 32 [4th Dept 1983]), where it *737 rejected a narrow application of the term “public servant”. The court relied on the principle that the common-law policy requiring strict construction of the Penal Law had been expressly abolished, and that penal statutes are to be construed “according to the fair import of their terms to promote justice and effect the objects of the law” (Penal Law § 5.00). The Appellate Division held that an individual seeking to avoid the impact of Grand Jury disciplinary sanctions could not shield himself from the unsealing and publication of the Grand Jury’s report by denominating his duties as that of an “independent contractor”, in order to fall outside the ambit of Penal Law § 10.00 (15). It concluded that the Penal Law’s definition of “public servant” should not be narrowly viewed as applying only to New York State employees, but also aimed at every person specially retained to perform some governmental service (supra, at p 36, citing People v Ebuzome, supra, at p 466). Again, the focus of the court in interpreting “public servant” was the relation between the particular activity in question and the purpose of the rule sought to be applied.
Employing the rationale of these authorities, I find that a fair reading of the New York obstruction of governmental administration statute extends to officials not actually in the employ of New York State. On the other hand, I find that the statutory requirement of “an official function”, read with the preceding phrase “administration of law” and the implicit limits of a State’s interest and power to enforce its own laws, imposes a requirement that the public servant be acting in a matter of direct interest to New York State with respect to law enforcement. Thus, I find that where a Federal officer is engaged in the execution of a strictly Federal law enforcement function, there is ample latitude under 18 USC § 111 to prosecute federally persons who forcibly assault, resist, oppose, impede, intimidate, or interfere with a Federal official.
Here, the People have submitted a memorandum asserting that United States Marshall Hollander, along with Manhattan Warrant Squad Officer Benjamin Chicosky were executing an arrest pursuant to a bench warrant issued in Manhattan Criminal Court. When the alleged obstruction of governmental administration occurred, United States Marshall Hollander was acting under the auspices of the Fugitive Investigative Strike Team, a joint Federal and State task force designed to execute the huge number of State bench warrants outstanding for those persons who have failed to appear in court on serious crimes.
Therefore, I find that Officer Hollander was engaged in the operation of a State law enforcement function to which protec *738 tian under the laws of our State should be afforded. It is the opinion of this court that the definition of the term “public servant” under Penal Law § 195.05 is applicable to a Federal officer engaged or assisting in a State law enforcement function.
The motion to dismiss is in all respects denied.

. Penal Law § 195.05 states: “A person is guilty of obstructing governmental administration when he intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act”.

. In 1982 our State Legislature enacted CPL 2.15, conferring “peace officer” status upon Federal law enforcement officials within New York State. Based on a need to create enhanced cooperation between State and Federal law enforcement officials, the Legislature acted affirmatively to expand protection conferred to Federal law enforcement officers operating within the State.