**UNITED STATES of America,**

v.

**Constantinos ANALYTIS, Defendant.**

**No. 87 Cr. 902 (DNE).**

United States District Court,
S.D. New York.

May 24, 1988.

---

Rudolph W. Giuliani, U.S. Atty. S.D.N.Y. (James J. McGuire, Asst. U.S. Atty., of counsel), for U.S.

Montell, Trakas & Marciano, Long Island City, N.Y. (Edward C. Montell, of counsel), for defendant.

## MEMORANDUM AND ORDER

EDELSTEIN, District Judge:

Defendant Constantinos Analytis moves to dismiss the indictment against him on the ground that the conduct alleged by the government does not constitute a violation of the criminal statute cited in the indictment.[1] Defendant also seeks to have the instant indictment dismissed on the ground that the filing of this federal indictment violates fundamental principles of comity and federalism and thus constitutes a violation of the defendant's fifth amendment right to due process of law. For the reasons set forth below, the motion is denied.

## BACKGROUND

The instant indictment arises from the allegation that the defendant bribed a federal agent in an effort to have him assist in illegally discharging a New York State tax liability. The government asserts that Eletherios Stavrakis, a businessman and a Greek Orthodox priest, had approached Internal Revenue Service ("IRS") Special Investigator Robert Balcerzak with the intent that Balcerzak fix certain federal tax liabilities. In late 1984, Balcerzak introduced Stavrakis to IRS Special Investigator Harry F. Norman. Norman, posing as a corrupt IRS employee, indicated that he would indeed assist Stavrakis in fixing tax liabilities.

In early 1985, Norman, acting in an undercover capacity, was paid by Stavrakis for fixing a number of federal tax liabilities. During that period, Stavrakis introduced Norman to Vasilios Apostolatos, the defendant's accountant. Apostolatos, indicated that, on behalf of his clients, he would be interested in securing the illegal discharge of both federal and state tax liabilities. Accordingly, in May 1985, the undercover operation was expanded to include New York State Department of Taxation and Finance Confidential Investigator

---

1. The indictment charges that "From on or about September 25, 1985, to on or about February 5, 1986, in the Southern District of New York and elsewhere, Constantinos Analytis, the defendant, directly and indirectly, did unlawfully, knowingly and corruptly give, offer and promise something of value, that is, money, to a public official, that is, an employee of the Internal Revenue Service, with intent to induce him to do and omit to do acts in violation of his lawful duty and thereby assist in the wrongful elimination of a New York State tax liability." The indictment charges that the alleged behavior constitutes violations of sections two and 201(b)(3) of Title Eighteen of the United States Code. The indictment alleges criminal conduct which occurred prior to the effective date of 18 U.S.C. § 201's 1986 amendments. Under the amended section 201, the crime alleged in the instant indictment would fall under 18 U.S.C. § 201(b)(1)(C).

Richard Bower, who posed as a corrupt New York State employee. Thereafter, Stavrakis, Norman, and Bower reached an agreement by which bribe money would be distributed. It was agreed that Norman and Stavrakis would both receive one-half of the bribe when a federal liability was discharged. When a state tax liability was discharged, Stavrakis, Norman, and Bower would each share equally in the bribe.

On September 25, Apostolatos met with Stavrakis, Norman, and Bower and asked that Bower fix a state tax liability on behalf of the defendant. On October 9, 1985, without Bower being present, Norman met with Stavrakis and Apostolatos. At that meeting, Apostolatos questioned Norman concerning the status of Analytis' tax liability. On October 16 and 17, 1985, Norman and Stavrakis telephonically discussed the fixing of Analytis' taxes.

On October 22, 1985, Norman, Bower, Stavrakis, and Apostolatos met. The four discussed the amount of the fixed state liability and the undercover agents let it be known that they would not fix any assessments of any kind unless the defendant taxpayer was willing to meet with them personally. On November 5, and 12, 1985, Stavrakis spoke on the telephone with Norman regarding the defendant. In the former conversation, Stavrakis indicated he had the pay-off money, and in the latter conversation, informed Norman that Analytis would attend a meeting with the four the next day. On November 13, 1985, the four met, but Analytis did not attend. At that meeting, Stavrakis gave Norman approximately 14,000 dollars in bribe money of which 4,000 dollars was earmarked for the fixing of the defendant's state tax liability. Stavrakis, Norman and Bower equally divided the 4,000 dollar sum.

On December 12, 1985, the defendant met with Stavrakis, Norman and Bower. Norman informed Analytis that he and Bower had worked together in fixing the defendant's state taxes, and Analytis confirmed that he wanted the taxes fixed. On February 5, 1986, Stavrakis, Apostolatos, Norman, and Bower met. At that meeting, Stavrakis reiterated to Norman that the

4,000 dollars delivered on November 13, 1985 was for the fixing of the defendant's previously discussed state tax liability.

*Failure to Make Out a Violation of the Statute*

Section 201(b)(3) of Title Eighteen of the United States Code, as it existed at the times relevant to the indictment, *see supra* note 1, provided:

> Whoever, directly or indirectly, corruptly gives, offers or promises anything of value to any public official or person who has been selected to be a public official, or offers or promises any public official or any person who has been selected to be a public official to give anything of value to any other person or entity, with intent—to induce such public official or such person who has been selected to be a public official to do or omit to do any act in violation of his lawful duty.

*Id.*

The defendant notes that the ultimate object of the bribe in the instant case was the illegal discharge of a New York State tax liability. As Norman, the federal agent who was allegedly bribed, had no authority regarding state tax matters, defendant argues that any bribe could not have been intended to prompt a "violation of ... lawful duty." 18 U.S.C. § 201(b)(3)(1982). Therefore, the defendant concludes that the conduct described by the government does not constitute a federal crime.

Early federal case law interpreting the predecessor statute to 18 U.S.C. § 201 indicates that when the behavior sought to be influenced by a bribe is unconnected to the government employee's official duties, no violation of the statute occurs. *See In re Yee Gee,* 83 F. 145 (D.Wash.1897); *United States v. Gibson,* 47 F. 833 (N.D.Ill.1891). For example, in *United States v. Gibson,* 47 F. 833 (N.D.Ill.1891), an Internal Revenue officer was bribed to set fire to a distillery located in Chicago, Illinois. Although the federal officer was empowered to make inspections of the distillery in order to guarantee that appropriate taxes were being paid on the alcohol there produced, he, of course, was not empowered to

commit arson. In quashing the indictment in that case, the judge ruled "to bribe or induce such an officer to do an act not connected with his line of duty impinges upon no United States law, and does not subject the offender to indictment and punishment in the United States courts." *Id.* at 834.[2]

 More recent federal decisions, however, call for a broader understanding of what conduct might constitute a violation of lawful duty.[3] For example, it is now clear that to support a conviction for federal bribery, it is not necessary that the bribee have the authority to actually achieve the object of the bribe. *See e.g., United States v. Gjieli,* 717 F.2d 968, 973 (6th Cir.1983), *cert. denied,* 465 U.S. 1101, 104 S.Ct. 1595, 80 L.Ed.2d 127 (1984); *United States v. Johnson,* 621 F.2d 1073, 1076 (10th Cir.1980); *United States v. Jacobs,* 431 F.2d 754, 759–60 (2d Cir.1970), *cert. denied,* 402 U.S. 950, 91 S.Ct. 1634, 29 L.Ed.2d 120 (1971). Further, it has been held that the object of the bribe need not even be within the general scope of federal, as opposed to state, power. *See United States v. Gjieli,* 717 F.2d 968 (6th Cir.1983), *cert. denied,* 465 U.S. 1101, 104 S.Ct. 1595, 80 L.Ed.2d 127 (1984).

In *United States v. Gjieli,* 717 F.2d 968 (6th Cir.1983), *cert. denied,* 465 U.S. 1101, 104 S.Ct. 1595, 80 L.Ed.2d 127 (1984), the Sixth Circuit upheld a conviction under 18 U.S.C. § 201(b)(3) in a situation analogous to that presented in the instant indictment.[4] In *Gjieli,* the defendant sought to bribe an agent of the Bureau of Alcohol, Tobacco and Firearms of the United States Treasury Department to assist a prisoner to escape from a Michigan State prison. The federal agent, as he explained to the defendant at the time of the initial bribe offer, had no authority or influence over state prison facilities. Nevertheless, the Appellate Court upheld the finding that the bribe was calculated to cause a breach of the agent's lawful duty. In reaching its decision, the court noted that the federal agent, if he had assisted in the escape, would have violated Michigan State law. Under 31 C.F.R. §§ 0.735–56, 0.735–30(f), the federal agent was under a duty not to engage in criminal activities. Similarly, under 28 C.F.R. § 45–735 (Appendix–Code of Ethics for Government Service, ¶ 2), the agent was under a duty to uphold the laws of all governments within the United States. Therefore, the court was able to uphold the decision that there had been a bribe calculated to prompt a breach of the federal agent's lawful duties.

Contrary to the view espoused in *Gjieli,* the defendant argues that a claim of breach of duty cannot be predicated on a violation of those federal regulations governing the conduct of federal employees. In support of this proposition, defendant cites *United States v. Morlang,* 531 F.2d 183 (4th Cir.1975). In that case, the Fourth Circuit reviewed a trial court's jury charge on lawful duty. Defendant is correct in asserting that the Appellate Court ruled that it would be incorrect to charge that a violation of "broad ethical and moral precepts" would support a conviction for a violation of section 201. The *Morlang* court, however, drew a distinction between specific mandates and indefinite moral instructions. While a violation of the latter

---

**2.** Similarly, it has been held in state courts that a complete lack of actual authority on the part of a bribed government official may constitute a valid defense to a charge of bribery. *See e.g., State v. Bowling,* 5 Ariz.App. 436, 427 P.2d 928 (1967); *People v. Herskowitz,* 80 Misc.2d 693, 364 N.Y.S.2d 350 (1975), *aff'd,* 51 A.D.2d 1047, 382 N.Y.S.2d 293 (2d Dep't 1976), *aff'd,* 41 N.Y. 2d 1094, 396 N.Y.S.2d 356, 364 N.E.2d 1127 (1977); *State v. Hibicke,* 263 Wis. 213, 56 N.W. 2d 818 (1953).

**3.** The existence of a lawful duty need not be predicated on a specific federal statute. *See United States v. Birdsall,* 233 U.S. 223, 231, 34

S.Ct. 512, 514–15, 58 L.Ed. 930 (1914). Rather, a lawful duty may be based on the requirements of the executive office under whose authority the federal agent is acting. *United States v. Morlang,* 531 F.2d 183, 192 (4th Cir.1975). Further, a lawful duty may be predicated on those standards for government conduct published in the Code of Federal Regulations. *See United States v. Gjieli,* 717 F.2d at 977; *United States v. Morlang,* 531 F.2d at 191–92.

**4.** There is, however, apparently no prior ruling in the Second Circuit in a case analogous to the one at bar.

could not support a finding of a breach of a lawful duty, a violation of the former certainly could constitute such a breach. As an example of a specific mandate, the court cited the ethical prohibition against using public office for private gain. As an example of an unacceptably indefinite moral prohibition, the court cited the duty not to "imped[e] Government efficiency or economy." 24 C.F.R. § 0.735–202.

The decision in *Morlang* did not reject the view that a breach of lawful duty may be predicated on a violation of those federal regulations governing employee conduct. Rather, the court held that a violation of such regulations could support a conviction under 18 U.S.C. § 201 if the regulations in question were specific and reasonably related to the alleged misconduct charged. *See id.* at 192. In the instant case, the government alleges a bribe was made in an attempt to prompt an IRS agent, working in concert with a state tax official, to illegally discharge a state tax liability. As indicated in the Code of Federal Regulations, a government employee is under duties to uphold the laws of all governments with the United States and to not engage in criminal activities. In the instant case, the government contends that a bribe was paid with the intent to prompt a violation of the laws of the State of New York. The conduct that the defendant allegedly sought to prompt would be a clear violation of a specific ethical mandate. Thus, the indictment's charge of a violation of lawful duty need not be predicated on the "broad ethical and moral precepts" rejected by the *Morlang* court. Rather, the alleged violation would seem to fall within the scope of prescriptions of "duties and modes of conduct" that were accepted as valid in *Morlang*. Thus, the defendant's reliance on *Morlang* is unavailing.

The defendant further asserts that if this court were to adopt the government's reasoning, all paid importunings of criminal activity made to federal employees would constitute violations of 18 U.S.C. § 201.[5] This objection has been previously rejected by the Sixth Circuit in *Gjieli.* The government's position does not require that every inducement given to a federal employee to perform an illegal act will constitute a violation of the statute. Rather, that *Gjieli* court held that the statute requires that the briber intended that the federal employee use his employee status to help realize the illegal goal of the bribe. *See id.* at 976 n. 8. Absent this intent, there would be no federal crime. Thus, the scope of section 201 is not as broad as suggested by the defendant.

█ In the instant case, it may be demonstrated at trial that the defendant possessed the requisite intent.[6] In ruling on a motion to dismiss a complaint, it is not for the court to attempt to anticipate the jury's findings of fact. Accordingly, the defendant's motion to dismiss on the ground that the facts alleged by the government do not constitute a violation of the offense charged is hereby denied.

### Due Process

█ Defendant asserts that a federal, as opposed to state, prosecution of this case violates fundamental principles of comity and federalism and thus constitutes a violation of the defendant's fifth amendment right to due process of law. This contention is based on the defendant's assertion

---

**5.** In particular, defendant cites the scenario in which a violation of 18 U.S.C. § 201 might occur when a federal meat inspector is bribed so that he might attempt to fix New York City parking tickets.

**6.** The defendant asserts that the federal agent in question had no power over New York State tax matters. The government has not addressed the scope of the agent's actual power or authority. Clearly, the IRS agent could not have legally fixed the defendant's tax liability. On the other hand, no government official could have *legally* arranged for the discharge of the tax liability.

As a practical matter, it is not clear to the court that the IRS agent could not have used in any way his official status as a means to accomplish the goal of the bribe. The systems governing state and federal taxation do not exist in a vacuum totally separate and distinct from each other. Clearly, the systems are related. It is possible that a corrupt federal tax official, through his connections with corrupt or corruptible state tax officials, could have indeed accomplished the goal of the bribe. *Cf. United States v. Gjieli,* 717 F.2d at 971 n. 5.

that the federal agent's involvement in the crime charged was merely that of "a conduit/intermediary who exercised an indirect and passive role" in the alleged transaction between the defendant and Bower, the state undercover agent. The defendant also objects that the participation of the federal agent was a machination designed to create federal jurisdiction and thus circumvent the application of New York State law.

There is precedent to the effect that a court may dismiss an indictment when its federal basis is manufactured and represents an abuse of federal power. *See United States v. Archer*, 486 F.2d 670, 671 (2d Cir.1973) In the instant case, however, it is apparent that there was a significant federal involvement in the investigation leading to the filing of the instant indictment. The defendant was only able to reach Bower, the state undercover agent, through use of the network of connections developed in the federal investigation. Norman, the federal undercover agent, acted as an intermediary in the supposed fixing of the state tax liability. It was also Norman who ultimately received the 4,000 dollar bribe, retaining one third of that sum as his compensation for his role in the transaction. Further, the government asserts that at trial it will demonstrate that Norman personally informed the defendant that he was a corrupt IRS employee and that he was involved in the fixing of the state tax liability. Given the integral role played by Norman, the court rejects the defendant's assertion that the bringing of a federal prosecution would be an undue infringement on state interests.[7]

■ As the defendant concedes, the facts alleged by the government would apparently constitute a violation of New York State law. It also appears that the defendant would enjoy certain advantages in a state prosecution that are not available in a

federal prosecution.[8] Nevertheless, a defendant, when his alleged offense is susceptible to prosecution in either state or federal court, has no constitutional right to be prosecuted in the forum of his choice. *See DeMaria v. Jones*, 416 F.Supp. 291, 301 (S.D.N.Y.1976). As discussed above, the indictment sets forth a basis for a federal prosecution. The defendant simply has no standing to demand that the United States Attorney forgo that prosecution in favor of a state prosecution. *See Derengowski v. United States Marshal*, 377 F.2d 223, 224 (8th Cir.1967), *cert. denied*, 389 U.S. 884, 88 S.Ct. 144, 19 L.Ed.2d 180 (1967). Accordingly, defendant's motion to dismiss the indictment on the ground it violates principles of comity and federalism, and thus violates of the fifth amendment right to due process of law, is hereby denied.

### CONCLUSION

The defendant's motion is denied.

SO ORDERED.

---

7. In fact, New York State, through the participation of Bower, was a knowing and willing participant in the undercover operation.

8. For example, under New York statute, a defendant cannot be convicted of an offense on the testimony of an accomplice unless such testimony is supported by corroborating evidence.

*See* N.Y.Crim.P.L. § 60.22 (McKinney 1981). In a federal trial, no such corroboration is required. *See United States v. Corallo*, 413 F.2d 1306, 1322–23 (2d Cir.), *cert. denied*, 396 U.S. 958, 90 S.Ct. 437, 24 L.Ed.2d 422 (1969); *Camara v. Scully*, 624 F.Supp. 106, 109 (S.D.N.Y. 1985).