OPINION OF THE COURT
Vito M. DeStefano, J.
The defendant is charged under District Court informations with violating Penal Law § 195.05, obstructing governmental administration in the second degree, and Penal Law § 120.45 (3), stalking in the fourth degree. The defendant moves, inter alia, to dismiss the informations as facially insufficient pursuant to CPL 170.30, 170.35, 100.15 and 100.40.
For the reasons that follow, those branches of the defendant’s motion to dismiss the informations are granted and the informations are dismissed.
The Charges
The informations charge the defendant as follows:
“About the 10th day of March, 2005, at about 4:40 p.m., at 132 Franklin PL, Woodmere, the defendant did violate New York State Penal Law Section(s) § 195.05 . . .
“To Wit: Your deponent was advised that the defendant, Mitchell J. Bilus, has previously made harassing intimidating remarks at the complainant, in front of fellow employees and postal customers. Mitchell J. Bilus did not have my permission to harass the complainant at her workplace. Mitchell J. Bilus has been previously informed to cease his harassing intimidating conduct, by the Woodmere Postmaster.
“Your deponent was advised that on the aforementioned date, time and place of occurrence, The Wood-mere Post Office, the defendant repeatedly harassed and intimidated the complainant, at her place of employment, without permission. The defendants actions once again disrupted the normal operation of the Woodmere Post Office. The complainant is requesting the defendant be arrested.”
“About the 10th day of March, 2005, at about 4:40 p.m., at 132 Franklin PL, Woodmere, the defendant *763 did violate New York State Penal Law Section (s) § 120.45 [3] . . .
“To Wit: Your deponent was advised that the defendant, Mitchell J. Bilus, has previously made harassing intimidating remarks at the complainant, in front of fellow employees and postal customers. Mitchell J. Bilus did not have my permission to harass the complainant at her workplace. Mitchell J. Bilus has been previously informed to cease his harassing intimidating conduct, by the Woodmere Postmaster.
“Your deponent was advised that on the aforementioned date, time and place of occurrence, The Wood-mere Post Office, the defendant repeatedly harassed and intimidated the complainant, at her place of employment, without permission. The defendants actions once again disrupted the normal operation-of the Woodmere Post Office. The complainant is requesting the defendant be arrested . . . .”
The supporting deposition of the complainant, which is attached to each of the informations, states the following:
“On Thursday September 16th, 2004 at about 12:20 pm Mitch Bilus was a customer at retail window number No.3 at the Woodmere Post Office. The clerk at retail window #3 was Bob Bonadonna. I overhead Mitch Bilus making comments about my work, to Bob. I spoke to Mitch and informed him that my boss was available if he wanted to speak with her. Mitch Bilus told me to ‘Shut the Fuck up’ ‘sit in your corner and shut up’. I went to get supervisor, Postmaster Carole O’Connell.
“I was present and I heard Mitch Bilus shouting at the Postmaster ‘that bitch shouldn’t be working in the front with people, you should keep her in the back where she belongs’. I heard the Postmaster tell Mitch Bilus that his behavior was unacceptable and would not be tolerated. Mitch Bilus continued to shout and then left the post office.
“Mitch Bilus has previously made harassing remarks to me in front of my fellow employees and postal customers. Mitch Bilus does not have my permission to harass me at my workplace. Mitch Bilus has been informed to cease his harassing conduct, by the Woodmere Postmaster.
“On March 10th, 2005 at about 4:40 pm I was work *764 ing at retail window #1 when Mitch Bilus came up to the counter he was rude so I directed him to wait on the line for another clerk. Mitch told me he did not have time for this shit and dumped a pile of about twenty small packages on the counter. The clerk at window #3, Bob, returned and Mitch grabbed his stuff and took it to window #3. Mitch had not waited on line as directed. While Mitch was at window #3 I heard Mitch say to Bob ‘She’s a fucking bitch she should not be here’. I heard Bob cautioned Mitch not to continue, that he would get them in trouble. Mitch restated ‘No, she is a fucking bitch and should not be here.’ I went to report this incident to the Postmaster and when we returned to the counter, I heard Mitch tell the postmaster, T did call her a bitch because she is a bitch and she should be in the back, she should not be up here’. Mitch had completed his business and he left.
“During the times Mitch has been at the post office, his harassment of me has become quite upsetting. Mitch has been previously advised to cease his behavior but it continues, I have not been able to perform my duties and while he is harassing me in front of my supervisor, co-workers and customers. Mitch’s actions have disrupted the general operation of the Post Office. I want Mitch Bilus arrested for Harassment and Obstruction of Governmental Administration . . . .”
The Motion
Defendant’s Arguments
Defendant argues that the obstruction charge must be dismissed because “a person cannot be charged with violating Penal Law § 195.05 for disrupting the administration of the Federal Government” (McGrath affirmation 1Í16). According to the defendant, a postal worker is not a “public servant” under the Penal Law. Moreover, the “accusatory instrument fails to contain any language that describes how the defendant’s actions interfered with a governmental function” (McGrath affirmation U 18).
With regard to the stalking charge, defendant argues that two incidents occurring six months apart do not constitute a course of conduct. In addition, defendant asserts that there is no allegation that his actions were likely to cause the complainant to *765 be in reasonable fear that her employment would be threatened (McGrath affirmation 1Í1Í 24-26). Last, defendant argues that the accusatory instrument is defective because it fails to allege that he was present at the post office solely to stalk the complainant (McGrath affirmation 1Í 27).
People’s Arguments in Opposition
In response, the People argue that the complainant is a public servant under the Penal Law and that defendant’s actions “impaired the administration of a government function,” as asserted in the supporting deposition of complainant (Brody affirmation 1111 6, 7, 8), wherein she stated that defendant’s actions prevented her from performing her duties and disrupted the general operation of the post office.
Regarding the charge of stalking, the People assert that two incidents can establish a course of conduct sufficient to withstand a motion to dismiss. The People further argue that defendant’s conduct was of such a nature that it reasonably put the complainant in fear of losing her job. In addition, the People assert that irrespective of the fact that the post office is open to the public and that the defendant may have complained about Ms. Varma, such “does not negate defendant’s intentions to go there with the sole intent to stalk Ms. Varma” (Brody affirmation 111113, 14).
Decision
The Charge of Obstructing Governmental Administration in the Second Degree
The information charging the defendant with obstructing governmental administration in the second degree is facially insufficient in that neither it nor the supporting deposition establishes with nonhearsay allegations every element of the offense charged (see CPL 100.40 [1] [b], [c]). Significantly, the allegations do not establish an impairment of state governmental function or interference with the performance of official functions by a public servant.
Penal Law § 195.05 provides, in pertinent part, as follows:
“A person is guilty of obstructing governmental administration when he intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any inde *766 pendently unlawful act. . .
Section 195.05 was enacted in 1965 as part of a comprehensive revision of the Penal Law. The section represented an effort to combine several provisions of the Penal Law which proscribed interference with the official actions of various state and local officers: former section 196 (“Interference with officers”) prohibited the interference with actions of constables, police officers or officers or agents of any society for the prevention of cruelty to animals; former section 490 (“Duty of officers”), requiring police officers and constables, and allowing officers or agents of any society for the prevention of cruelty to animals, to arrest persons violating the article, and making it a crime to interfere with such arrests; former section 1320 (“Preventing the meeting or organization of either branch of the legislature”); former section 1323 (“Intimidating a member of the legislature”); former section 1824 (“Attempting to prevent officer from performing, duty”) proscribed interference with executive officers; former section 1825 (“Resisting officer”), again, dealing with executive officers; former section 1851 (“Resisting public officer in the discharge of his duty”).
Considering the statutory derivation of section 195.05 and viewing it in conjunction with Penal Law § 10.00 (15), which defines the term “public servant,” it is evident that the purpose of the statute is to impose criminal sanctions solely against conduct which obstructs the functions of state and local government offices and officers. Significantly, Penal Law § 10.00 (15) defines public servant as:
“(a) any public officer or employee of the state or of any political subdivision thereof or of any governmental instrumentality within the state, or (b) any person exercising the functions of any such public officer or employee. The term public servant includes a person who has been elected or designated to become a public servant.”
Although the People correctly note that the term “public servant” is not to be strictly construed (Penal Law § 5.00), it is also axiomatic that all parts of a statute must be harmonized with each other and with the general purpose of the whole statute (McKinney’s Cons Laws of NY, Book 1, Statutes § 98). To interpret “public servant” to include federal postal clerks would ignore the other parts of the statute and would not comport with the statute’s general purpose. Moreover, the interpretation suggested by the People would, in effect, make it a crime under *767 section 195.05 to interfere with any governmental instrumentalities or officers in the state, including, conceivably, foreign governmental instrumentalities and officers. In this regard, it must be noted that other sections of the Penal Law, as, for example, those dealing with bribery (Penal Law § 200.00 et seq.), make bribery of, or by, a “public servant” criminal acts. Accepting the People’s interpretation would thus require the court to accept that an officer or agent of a foreign government is a public servant and that such person could be prosecuted under the relevant Penal Law section for accepting a bribe (see, e.g., Penal Law § 200.10). This interpretation, which logically and naturally follows from the arguments set forth by the People, cannot be supported by any reasonable view of the Penal Law.
The case law dealing with the operation and application of section 195.05, minimal as it is, tends to support the conclusion of this court (see, People v Arvio, 66 Misc 2d 474 [Spring Val Just Ct 1971]; People v Garfield, 63 Misc 2d 79 [Utica City Ct 1970]). The cases relied on by the People in their opposition papers are either distinguishable (People v Smith, 128 Misc 2d 733 [Crim Ct, Bronx County 1985] [defendant properly charged with obstruction where it was alleged that he interfered with a United States marshal acting as part of joint federal and state task force executing state bench warrants]) or otherwise unpersuasive (e.g., People v Ehuzome, 107 Misc 2d 464 [Sup Ct, Queens County 1981]).
Accordingly, the information charging the defendant with obstructing governmental administration in the second degree is dismissed.[1]
The Charge of Stalking in the Fourth Degree
The People have likewise failed to establish with nonhearsay allegations the charge of stalking in the fourth degree.
Penal Law § 120.45 states the following in pertinent part:
“A person is guilty of stalking in the fourth degree when he or she intentionally, and for no legitimate purpose, engages in a course of conduct directed at a specific person, and knows or reasonably should know that such conduct. . .
“3. is likely to cause such person to reasonably fear *768 that his or her employment, business or career is threatened, where such conduct consists of appearing, telephoning or initiating communication or contact at such person’s place of employment or business, and the actor was previously clearly informed to cease that conduct.”
Initially, the court notes the somewhat anomalous nature of the charges against the defendant, when considered together. On the one hand, the defendant was charged with interfering with a governmental function and with preventing the complainant from performing her official duties. Yet, it is the same conduct which forms the basis of the charge that defendant stalked the complainant, and that, as a result, the complainant was likely to reasonably fear that her employment was threatened.
That defendant’s allegedly unlawful conduct could interfere with the function of a federal government office and the performance of the duties of the complainant, who, according to the People, is a Penal Law public servant, and at the same time, cause that “public servant” to be in fear of losing her job, strains credulity.
Even ignoring the anomaly, the conduct complained of, which consists of an incident allegedly occurring in March 2005, and which the People seek to further evidence by a prior similar incident occurring in September 2004, is simply not of a nature that would likely cause the complainant to be in reasonable fear of losing her employment. Notably, it is alleged that the defendant, while in the course of conducting business at the post office, shouted epithets at or near the complainant and then left the office, after being told to leave and after completing his business. The court cannot, on the bare allegations presented, infer the likelihood that complainant feared for her employment. Although the complainant apparently stated that she could not perform her duties while the defendant was allegedly harassing her, without any indication as to how long the defendant’s conduct lasted and how long she was unable to perform her duties, the allegations are patently insufficient.[2]
Belatedly, the foregoing discussion assumes that the allegations in the supporting deposition could constitute a “course of *769 conduct” directed at the complainant. The court concludes that in the absence of any allegations of defendant-initiated contact with the complainant between September 2004 and March 2005, the allegations contained in the supporting deposition do not constitute a course of conduct under section 120.45. No case has been cited by the People to support their contrary contentions.
For the foregoing reasons, the information charging the defendant with violating Penal Law § 120.45 is dismissed.
The remaining branches of the defendant’s motion, except as otherwise indicated herein, are denied as moot.

. In light of the above, the court declines to reach the issue of whether the defendant’s conduct was an “independently unlawful act” which would be required to support a charge of obstruction in the absence of an overtly physical act (see, generally, Matter of Davan L., 91 NY2d 88 [1997]).

. Other allegations contained in the supporting deposition that complainant’s coworker informed the defendant “he would get them in trouble” and that defendant “previously made harassing remarks” are vague, conclusory and without any import. (See, People v Dumas, 68 NY2d 729 [1986].)